Filed 10/31/13  Gonya v. Stroud CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PAUL GONYA et al., | D062315 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. GIC876435) |
| KENNETH STROUD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.

Law Office of Steven A. Marczeski and Steven A. Marczeski for Defendant and Appellant.

Barker Olmsted & Barnier and Christopher W. Olmsted for Plaintiffs and Respondents.

Defendant Kenneth Stroud appeals an order denying his motion for attorney fees under Civil Code[1] section 1717.  Plaintiffs Paul Gony and Gonya Enterprises, Inc. (GEI) (together Gonya/GEI) sued Stroud for express contractual indemnity, implied contractual indemnity, and equitable indemnity, alleging Stroud was required to indemnify Gonya/GEI for their settlement in a lawsuit with a third party, Dartmouth Development Company (Dartmouth).  Gonya/GEI based their claims on several agreements between themselves, Stroud, and Stroud's company.   Stroud cross-complained against Gonya/GEI for declaratory relief on the indemnity issue and common count causes of action arising out of unpaid work Stroud performed for Gonya.

After the bench trial commenced, Gonya voluntarily dismissed both contractual indemnity claims.   The court found for Stroud on the remaining equitable indemnity claim, finding (1) Stroud never signed the contract establishing a right to indemnification, (2) the contract submitted at trial was incomplete and unreliable, and (3) section 2774 (see fn. 5, *post*) and the doctrine of unclean hands barred the claim.

Stroud then moved for attorney fees under section 1717 based on the attorney fee provisions in an operating agreement between Stroud's company and Dartmouth.  The court denied the motion, finding there were no contracts on which Stroud could rely to trigger application of section 1717.  Specifically, the court found (1) Stroud had not signed the indemnity agreement with Gonya, and (2) the operating agreement with

---

[1]     All statutory references are to the Civil Code unless otherwise specified.

2

Dartmouth applied to its members and did not provide attorney fees in an action to enforce its indemnity provision.

Stroud contends the trial court (1) erred in denying his motion for attorney fees based on his failure to sign the operating agreement, and (2) erred in finding the attorney fees clause in the operating agreement was not sufficiently extensive to include an action to enforce the indemnity provision. We hold Stroud is not entitled to attorney fees because the contracts on which he relies are not the contracts Gonya/GEI sought to enforce in their lawsuit.

BACKGROUND

A. *Factual Background*

1. *The formation of REI-NC, LLC*

Gonya is a developer and the sole owner of GEI. In 1987 GEI started a residential construction business called Real Estate International (REI) whose primary projects involved large-scale custom homes in Alpine. Early on, Gonya utilized the services of David Waitley as a real estate agent to sell the homes and Stroud as a subcontractor and on-site supervisor. By 1998 Gonya decided to retire and remove himself from the day-to-day operations of property development. His retirement plan allowed Waitley and Stroud to use the good will of REI and form a new business entity, REI-NC, LLC (REI-NC), to continue developing properties. In return, Waitley and Stroud allegedly agreed to use Gonya as a consultant and indemnify him from any claims arising out of their business activities.

3

Waitley and Stroud formed REI-NC under the terms of the REI-NC, LLC operating agreement (REI-NC Operating Agreement). Among numerous other terms, the REI-NC Operating Agreement contained the following indemnification provision:

"16.4 <u>Indemnification by Company</u>:

"16.4.1 The Company shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the Company, by reason of the fact that the person is or was a Manager, Member, employee or agent of the Company, or is or was serving at the request of the Company as a manager, member, officer, employee or agent of another limited-liability company, partnership, joint venture, trust or other enterprise, against expenses, including attorney's fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with the action, suit or proceeding if the person acted in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful. . . ."

Neither Gonya nor GEI was a party or signatory to the REI-NC Operating Agreement.

REI-NC then entered into an additional, separate indemnity agreement with Gonya and GEI (Indemnity Agreement). The relevant portion of the agreement read:

"Section 2. AGREEMENT TO INDEMNIFY.

"a. General Agreement. In the event Indemnitee [Gonya] was, is, or becomes a participant in, or is threatened to be made a participant in, a proceeding by reason of (or arising in part out of) an indemnifiable event, the Company shall indemnify Indemnitee [Gonya] from and against any and all expenses to the fullest extent permitted by law, as the same exists or may hereafter be amended or interpreted (but in the case of any such amendment or interpretation, only to the extent that such amendment or interpretation permits the Company to provide broader indemnification rights than were permitted prior thereto). The parties hereto intend that this Agreement shall provide

4

for indemnification in excess of that expressly permitted by statute, including, without limitation any indemnification provided by the Company's articles of incorporation, its bylaws, a vote of its shareholders or disinterested directors, or applicable law."

The Indemnification Agreement made no mention of attorney fees. Both Gonya and Waitley signed the Indemnity Agreement, but Stroud did not.

2. *The formation of REI-NC Dartmouth, LLC*

REI-NC subsequently started a home construction venture with Dartmouth to build and sell custom homes. The two entities formed two limited liability companies, REI-NC Dartmouth I, LLC and REI-NC Dartmouth II, LLC, each of which was governed by a separate, but essentially identical, operating agreement (Dartmouth Operating Agreements). Only Waitley signed on behalf of REI-NC; Stroud did not sign either one. Additionally, neither Gonya nor GEI were signatories or parties to those agreements. The Dartmouth Operating Agreements both contained the following relevant provisions:

"6.5 Indemnification. To the fullest extent provided or allowed by California law, the Company shall indemnify, defend, protect and hold the Members, the Manager, the members of the Management Committee, the officers if any, the employees and the agents blithe Company harmless for any and all costs, losses, liabilities and damages incurred, paid or accrued by such Member, the Manager, members of the Management Committee, officer employee or agent arising from, out of or in connection with the business of the Company. [¶] . . .

"15.2 Rights of Creditor And Other Persons Under Operating Agreement. This Operating Agreement is entered among the Company and the Members for the exclusive benefit of the Company, its Members, and their successors and assigns. This Operating Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by applicable statute, no such creditor or other Person shall have any rights under this Operating Agreement or any

5

agreement between the Company and any Member with respect to any Capital Contribution or otherwise. [¶] . . .

"15.4 <u>Attorneys' Fees</u>. In the event suit is brought to enforce or interpret any part of this Operating Agreement, the prevailing party shall be entitled to recover as an element of his costs of suit, and not as damages, reasonable attorneys' fees to be fixed by the court. The 'prevailing party' shall be the party entitled to recover its costs of suit, whether or not the suit proceeds to final judgment. A party not entitled to recover costs shall not recover attorneys' fees. No sum for attorneys' fees shall be counted in calculating the amount of a judgment for the purposes of determining whether a party is entitled to recover its costs or attorneys' fees."

REI-NC Dartmouth II then hired Gonya/GEI as a consultant for its projects. Only Waitley signed the consulting engagement agreement (Consulting Agreement) with Gonya/GEI. The Consulting Agreement contained provisions detailing Gonya's specific duties and his fees; it contained neither indemnification nor attorney fee provisions.

3. *The Dartmouth Action*

Dartmouth eventually grew concerned that Stroud, Waitley, and Gonya were mismanaging funds for the REI-NC Dartmouth projects. An investigation revealed that REI-NC Dartmouth projects had been repeatedly billed for costs and expenses that were meant for Waitley's and Gonya's other projects. Dartmouth subsequently filed suit against Waitley, Stroud, REI-NC, and Gonya (*Dartmouth* Action).[2] Dartmouth alleged claims of fraud, embezzlement, and breach of contract, among others. Although initially Waitley, Stroud, REI-NC, and Gonya retained joint counsel, Gonya eventually retained independent counsel. Gonya settled with Dartmouth for $1 million. Stroud and Waitley

---

[2]     *Dartmouth Development Company, Inc., et al. v. Real Estate International Corporation et al.* (Super. Ct. San Diego County, 2005, No. GIC845987).

6

also agreed to settle for $1 million, but paid only $750,000. Gonya then sought indemnity from Waitley, Stroud, and REI-NC. Waitley indicated in a memorandum that Gonya made a demand for indemnification (Pre-Litigation Demand) for his involvement in the *Dartmouth* Action, and that such indemnification was provided "by the contract to which [Gonya and GEI] are not a part to but have been so identified pursuant to paragraph 6.5 of said contract."

B. *Procedural Background*

1. *Gonya/GEI's complaint*

Gonya/GEI filed the complaint against Waitley, Stroud, and REI-NC in this case in December 2006. The complaint contained four causes of action. In their first cause of action, Gonya/GEI alleged their right to indemnification based on express contractual indemnity. Gonya/GEI based this claim on (1) the indemnification provision in the REI-NC Operating Agreement under which Gonya/GEI claimed to be a third party beneficiary, and (2) the Indemnity Agreement with Waitley and REI-NC. Under this cause of action, the complaint also alleged Gonya/GEI had previously demanded orally and in writing that Waitley, Stroud, and REI-NC fulfill their obligation to indemnify. Gonya/GEI attached the REI-NC Operating Agreement and the Indemnity Agreement to the complaint as Exhibit A and Exhibit B, respectively.

Gonya/GEI's second cause of action alleged implied contractual indemnity. Gonya/GEI based this claim on their Consulting Agreement with REI-NC/Dartmouth II. Gonya/GEI conceded the Consulting Agreement did not have an express provision for indemnification, but claimed "it was understood" and "equitably implied" in the

7

Consulting Agreement that Gonya/GEI would receive indemnification for expenses from lawsuits arising out of his relationship with REI-NC. The Consulting Agreement was attached to the complaint as Exhibit C. Gonya/GEI also included an allegation that REI-NC entered into the Dartmouth Operating Agreements.

Gonya/GEI's third cause of action alleged equitable indemnity. Gonya/GEI alleged his involvement in the *Dartmouth* Action was based on his alleged liability for the actions of Waitley, Stroud, and REI-NC. Gonya/GEI denied contributing to the damages sought in the *Dartmouth* Action, denied being a member of REI-NC, and denied being a participant or signatory to the Dartmouth Operating Agreements.[3] Stroud subsequently filed a cross-complaint asserting a claim for declaratory relief on the indemnity issues and two common count causes of actions.[4]

2. *The bench trial*

Gonya/GEI's action against Stroud went to a bench trial. Gonya/GEI dismissed their claims for express and implied contractual indemnity during final argument, leaving only the equitable indemnity claim.

In its decision, the court determined "no intact, signed indemnity agreement" existed to support Gonya/GEI's claim. The court found for Stroud on the equitable

[3] Gonya's complaint included a fourth cause of action for breach of contract based on unpaid fees under the Consulting Agreement. Gonya made this claim only against Waitley. Waitley ultimately settled with Gonya before trial and Gonya dropped the breach of contract claim.

[4] Stroud's cross-complaint is not a subject of his appeal.

8

indemnity claim on the following grounds: (1) Stroud never signed the Indemnity Agreement; (2) the agreement provided at trial was "incomplete and highly unreliable"; and (3) the claim for equitable indemnity was barred by section 2774[5] and the doctrine of unclean hands. The court denied declaratory relief for Stroud based on his admitted participation in the transactions which led to the *Dartmouth* Action.

### 3. *Stroud's motion for attorney fees*

Stroud subsequently moved for attorney fees under section 1717.[6] Stroud argued he was entitled to fees under the contractual indemnity claims because Gonya/GEI had abandoned them in final argument. As such, Stroud argued he successfully defended himself and "must be considered the prevailing party upon each contract that Gonya has demanded and claimed a right to indemnity under." While Stroud conceded neither Gonya/GEI nor himself was a party to the Dartmouth Operating Agreements, he argued he could rely on those agreements as the basis for his right to attorney fees. Although Gonya/GEI did not attach the Dartmouth Operating Agreements to his complaint, Stroud argued Gonya/GEI "utiliz[ed] the agreements" for their suit by (1) issuing the Pre-Litigation Demand, and (2) referencing the agreements in paragraphs 28 and 30 of the

---

[5]     Section 2774 reads: "An agreement to indemnify a person against an act already done, is valid, even though the act was known to be wrongful, unless it was a felony."

[6]     Stroud also moved for attorney fees under Business and Professions Code section 7108.5, but has not appealed the court's order on those grounds.

complaint. Stroud's motion did not assert a right to attorney fees with respect to the equitable indemnity claim.

At the motion hearing, Stroud's counsel again stated explicitly that Stroud was seeking to recover attorney fees based on the Dartmouth Operating Agreements. He argued the reference to the Dartmouth Operating Agreements in the Pre-Litigation Demand and in Gonya/GEI's complaint brought the agreements "within the purview of the complaint and within this case." Stroud's counsel again asserted Stroud was the prevailing party under section 1717 "because he obtained the greater relief in getting the claim dismissed against him."

Gonya/GEI's counsel responded that the Dartmouth Operating Agreements were not the basis for either the court's ruling nor Gonya/GEI's suit for indemnity. Gonya/GEI's counsel also stated the complaint referred to the Dartmouth Operating Agreements "for the purposes of putting context to the other parties' contractual relationships."

The court's minute order denying Stroud's motion for attorney fees states:

> "The court found in favor of Stroud on the cause of action for equitable, not contractual indemnity. The court's decision found that Stroud did not sign the indemnity agreement. [Citation] Even if Stroud had signed the indemnity agreement, the indemnity agreement does not state that the prevailing party is entitled to attorney's fees in a contest over claims for indemnity. During oral argument, Stroud stated that he was relying on the indemnification agreement within the REI/Dartmouth operating agreement in support of fees. However, the court has reviewed the operating agreement and finds that this is a standard indemnification clause for fee and costs of its members. Nonetheless, it is not sufficiently extensive to include attorney's fees to the prevailing party in an action to enforce the indemnification provision.

10

"In *Baldwin Builders v. Coast Plastering Corp.* (2005) 125 Cal.App.4th 1339, 1346, the express language of the attorney fee clauses authorizes the recovery of attorney fees where one of the parties to the agreement brings an action to enforce the indemnity. In contrast, the indemnity contract in this case is silent on the issue. Thus, unlike *Baldwin*, neither the separate indemnification agreement, nor the clause in the operating agreement [is] 'on [the] contract' within the meaning of section 1717(a)' and the attorney fee clauses are not subject to the statutory requirement of reciprocity.

"There are no contracts upon which to rely on Civil Code section 1717. The court's decision found that Stroud did not sign the writing. . . .  [Citation]."

C. *Contentions on appeal*

Stroud raises two main contentions on appeal. Stroud first contends the court erred in ruling Stroud "was not entitled to enforce the terms of the contract as he was not a signatory to the contract." Relying on *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, Stroud correctly states attorney fees under section 1717 can be available to a nonsignatory defendant when the defendant would have been liable for the plaintiff's attorney fees if the plaintiff had been successful in his action. However, Stroud asserts his right to attorney fees as a nonsignatory defendant to the *Dartmouth Operating Agreements*—a different set of contracts than the Indemnity Agreement on which the trial court ruled. According to Stroud, if Gonya/GEI "[had] been successful for their claim of contractual indemnity, [Gonya/GEI] would have been able to claim attorney's fees pursuant to the contract that [they] demanded indemnification under from [Stroud]."

Second, Stroud contends the court erred in determining the attorney fees clause within the Dartmouth Operating Agreements was not broad enough to include litigation

11

over the indemnity provision in those agreements. Relying on *Toro Enterprises, Inc. v. Pavement Recycling Systems, Inc.* (2012) 205 Cal.App.4th 954, 957-958 (*Toro Enterprises*), Stroud contends that because the attorney fee clause in the Dartmouth Operating Agreements reads: "In the event suit is brought to enforce or interpret any part of this Operating Agreement . . . , " it is broad enough to include suits to enforce the agreements' indemnification clause.

Although his two main contentions are clear, Stroud's briefs create some confusion as to the exact cause of action on which he asserts his right to attorney fees. In its decision after trial, the court ruled in Stroud's favor on the equitable indemnity claim, as Gonya/GEI had dismissed the contractual indemnity claims. Stroud, however, moved for attorney fees as the prevailing party on the contractual indemnity claims. In denying his motion, the court reiterated that it found for Stroud only on equitable indemnity. Nonetheless, Stroud repeatedly argues on appeal he is entitled to attorney fees for the *contractual* indemnity claims. However, he specifically refutes the trial court's findings on the *equitable* indemnity claims.

## DISCUSSION

A. *Standard of Review*

"We review de novo a determination of the legal basis for an award of attorney[] fees." (*Toro Enterprises, supra,* 205 Cal.App.4th at p. 957.)

B. *Section 1717*

When parties contract specifically to allocate the award of attorney fees, such agreements are "subject to the restrictions and conditions of section 1717." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278.)

Section 1717, subdivision (a) provides:

> "In an action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Claims brought under this section are limited by subdivision (b):

> "(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

> "(2) Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

The "primary purpose of section 1717 is to ensure mutuality of remedy for attorney fees claims under contractual attorney fee provisions." (*Santisas v. Goodwin* (1998) 17 Cal.4th 599, 610.) When a contract authorizes the recovery of attorney fees to the prevailing party or where the contract authorizes such recovery to only one party, section 1717 creates a reciprocal right. (*Id.* at pp. 610-611.)

13

D. Analysis

1. *Stroud's contention that he may recover attorney fees under the contractual indemnity claims*

Any contention that Stroud may recover fees on the contractual indemnity claims fails because Gonya/GEI voluntarily dismissed those claims. As section 1717, subdivision (b)(2) explicitly states, "[w]here an action has been voluntarily dismissed . . . there shall be no prevailing party for the purposes of this section." The statute "provides no temporal limitation" and thus "attorney fees are barred regardless of when the dismissal is filed." (*CDF Firefighters v. Maldonado* (2011) 200 Cal.App.4th 158, 164-165.)

As Stroud is well aware, Gonya/GEI dismissed their express and implied contractual indemnity claims during final argument of the bench trial. According to the statute, neither Gonya/GEI nor Stroud was the prevailing party. Thus, Stroud cannot recover attorney fees because he did not "prevail" on those claims.

As noted, *ante*, Stroud does not clearly identify the cause of action on which he bases his right to fees. He fluctuates between his right to fees under the contractual indemnity claim and the court's denial of fees under the equitable indemnity claim. If his appeal were premised solely on his claimed status as the prevailing party on the contractual indemnity claims, then it fails in its entirety and our analysis should end here. However, because Stroud specifically appeals two particular findings the court made regarding attorney fees on the equitable indemnity claim, we will, in the interest of clarity, also address those points.

14

2. *Stroud's contention that the trial court erred by denying attorney fees based on his failure to sign the Dartmouth Operating Agreements*

Stroud contends that, under *Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d 124, he is entitled to recover attorney fees as a nonsignatory defendant to the Dartmouth Operating Agreements. In his motion, at his hearing, and throughout his briefs, Stroud has repeatedly emphasized his reliance on the Dartmouth Operating Agreements as the basis for his right to attorney fees. He contends Gonya/GEI "relied on these agreements before and during trial," and the court "considered [them]" in making its decision. As such, Stroud believes he is entitled to recover based on the attorney fees clause within those agreements. This argument fails for several reasons.

In making this contention, Stroud mischaracterizes the court's rulings. Despite the court explicitly stating it denied the motion based on his failure to sign the *Indemnity Agreement*, Stroud suggests the court denied the motion based on his failure to sign the Dartmouth Operating Agreement. In fact, the court provided distinct reasons as to why Stroud could not rely on either of these agreements. The court first explained Stroud could not recover fees under the Indemnity Agreement because (1) he did not sign it, and (2) it did not include an attorney fees clause for an action brought by one party to enforce the agreement. The court then separately ruled on the Dartmouth Operating Agreements, finding the indemnification provision (1) was for fees and costs "of its members", and (2) was not sufficiently broad enough to include attorney fees in an action to enforce that provision. The court never stated Stroud's lack of signature was its reason for denying

15

fees under the Dartmouth Operating Agreements. Stroud conflates the court's rulings and appeals a finding that was simply not made.

Furthermore, Stroud cannot recover attorney fees under the Dartmouth Operating Agreements because Gonya/GEI did not bring an action to enforce those contracts. For a party to recover attorney fees under section 1717, there must be an action "on the contract." While Stroud appears to believe any contract related to the action will suffice, "on the contract" has a specific meaning within section 1717. "An action is 'on the contract' when it is brought to enforce the provisions of the contract." (*MBNA America Bank, N.A. v. Gorman* (2006) 147 Cal.App.4th Supp. 1, 7, citing *McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89-90.) Section 1717 applies when "*the contract sued upon itself* specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 357, italics added).

Gonya/GEI's action is not "on the [Dartmouth Operating Agreements]" for the purposes of section 1717. Gonya/GEI did not bring their suit to enforce the provisions of the Dartmouth Operating Agreements. While their Pre-Litigation Demand suggests they might have initially sought indemnity under those agreements, they did not incorporate that claim into their lawsuit. In fact, in their complaint, Gonya/GEI denied signing or being a party to the Dartmouth Operating Agreements. Stroud even conceded in his motion that Gonya/GEI did not attach those agreements to their complaint. Gonya/GEI based their suit on the REI-NC Operating Agreement, Indemnity Agreement, and Consulting Agreement. Gonya/GEI did not allege Stroud was liable under the Dartmouth

16

Operating Agreements. The brief mention of those agreements in the complaint served only to demonstrate the relationships between all the parties.

Furthermore, section 1717(a) explicitly states it applies to "the party who is determined to be the party *prevailing on the contract . . . .*" The trial court never found Stroud to be the prevailing party on the Dartmouth Operating Agreements. It makes no analysis or mention of those agreements except to explain the events leading up to the *Dartmouth* Action. It only found in favor of Stroud on the equitable indemnity claim based on the shortcomings of the Indemnity Agreement. No party prevailed on the Dartmouth Operating Agreements because they simply were not a subject of the litigation. Stroud believes because "the trial court ruled in greater detail [on the Dartmouth Operating Agreements] . . . [it] shows that the trial court did in fact consider these contracts in its ruling to deny attorney's fee clauses." The court's explanation as to why Stroud cannot rely on the Dartmouth Operating Agreements is not proof that Gonya/GEI's lawsuit was an action to enforce those agreements.

Section 1717 does not allow the prevailing party to use any contract containing an attorney fees clause; the prevailing party must point to an attorney fee clause within the contract upon which he was sued. Stroud cannot claim any right to attorney fees based on the Dartmouth Operating Agreements' provisions because there was no action on those contracts within the meaning of section 1717.

3. *Stroud's contention that the court erred by finding the attorney fees provision within the Dartmouth Operating Agreements was not sufficient to include litigation over the indemnification provision*

Stroud also appeals the court's ruling that the attorney fee clause in the Dartmouth Operating Agreements was not sufficiently extensive to include attorney fees for the prevailing party in an action to enforce the indemnity provision of those agreements. He cites *Toro Enterprises, supra,* 205 Cal.App.4th at pages 957-958, which held an attorney fee clause granting fees to "any dispute resolution between the parties" necessarily included an action to enforce the indemnity provision within that contract. Stroud contends because the attorney fees clause in the Dartmouth Operating Agreements states "[i]n the event suit is brought to enforce or interpret any part of this Operating Agreement . . . ," it includes actions to enforce the indemnity provision within those agreements.

While Stroud may be correct in stating the attorney fees clause in the Dartmouth Operating Agreements would cover actions between the contracting parties to enforce the indemnity provision, he is still relying on a contract that was not a part of Gonya/GEI's action. As we explained above, Gonya/GEI did not seek to enforce any part of the Dartmouth Operating Agreements against Stroud. Gonya/GEI's Pre-Litigation Demand that sought indemnity under the Dartmouth Operating Agreement was just that—a *pre-litigation* demand. Gonya/GEI never sued to enforce the Dartmouth Operating Agreements. Whether or not the trial court was correct in its analysis of the sufficiency of the Dartmouth Operating Agreements' provisions is irrelevant because the Dartmouth Operating Agreements are not "on the contract" within the meaning of section 1717.

18

The trial court correctly ruled there are no contracts on which Stroud can rely to recover attorney fees as the prevailing party against Gonya/GEI. Stroud's reliance on the Dartmouth Operating Agreements is misplaced because Gonya/GEI never sought to enforce their provisions against Stroud in their lawsuit for indemnity. Thus, they are not subject to the reciprocity provided by section 1717.

DISPOSITION

The order is affirmed. Gonya/GEI shall recover their costs on appeal.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.