[No. D034076. Fourth Dist., Div. One. Oct. 13, 2000.]

CITY OF VISTA, Plaintiff and Appellant, v.
ROBERT THOMAS SECURITIES, INC., Defendant and Respondent.

COUNSEL

Duckor, Spradling & Metzger, Scott L. Metzger and Leslie Schwaebe Akins for Plaintiff and Appellant.

Estes, Hoyt & Hansen, Joel C. Estes and Kevin J. Hoyt for Defendant and Respondent.

## OPINION

O'ROURKE, J.—The City of Vista (Vista) appeals the court's grant of summary judgment in favor of Robert Thomas Securities, Inc. (Robert Thomas). Vista contends (1) the court erred when it found the suit barred by the statute of limitations because there is a triable issue of fact as to when Vista sustained damage, and (2) the four-year statute of limitations applies. We agree there is a triable issue of fact as to when Vista sustained damage.

### FACTUAL AND PROCEDURAL HISTORY

This suit stems from Vista's purchase of securities called interest-only strips. The holder of the interest-only strip is entitled to a certain percentage of the interest from a pool of bonds. When interest rates decline, debtors may prepay the bonds, which causes a reduction of the underlying pool of debt as well as the amount of interest paid to the holder of the interest-only strip.

In 1990, Vista purchased the two securities that are the subject of this action: Small Business Administration interest-only strip No. 366 (SBA 366) and Small Business Administration interest-only strip No. 533 (SBA 533) (collectively SBA strips). In February 1990, Vista purchased SBA 366 for $378,001.88 and in June, Vista purchased SBA 533 for $1,025,843.02.

Vista is a municipal corporation, whose investments are restricted by Government Code section 53601, as well as its own resolutions. Frank Edward Rowlen was Vista's treasurer at the time the SBA strips were purchased.

By September 6, 1990, Rowlen decided the SBA strips were not a proper investment for Vista and asked Phillip M. Lewis, the Robert Thomas broker from whom Vista purchased the securities, to return the money Vista had paid for the securities. In a September 24, 1990 letter to Lewis, Rowlen stated he was uncomfortable with the "interest rate risk, speculative nature and risk features" of the SBA strips, which were not appropriate securities for Vista. Rowlen's October 1 letter to Lewis explained the SBA strips violated Vista's investment policies. On October 25, 1990, Rowlen wrote to Steven Putnam, the president of Robert Thomas, asking his help in rescinding the trades due to Lewis's misrepresentation of the nature of the securities. On October 18, 1991, Rowlen wrote a letter to another dealer demanding restitution for SBA 533 and stating: "Our analysis of this transaction indicates that due to the number of dealers involved with this trade, of which you were a part, that price collusion existed among securities dealers in a direct attempt to defraud the City of Vista."

Rowlen testified that by price collusion, he meant each of the broker-dealers involved in SBA 533 charged a markup. Rowlen also testified that in October 1991 he still believed the interest from the SBA strips would be at least equal to the amount paid for the SBA strips. He also believed the brokerage firms would give him restitution.

Putnam testified he believed the markup Vista paid was excessive. He qualified this opinion by adding "I don't know any of the rationale for the price that was paid, so it is difficult for me to judge . . . ."

Vista received monthly interest payments on SBA 366 into 1993 and on SBA 533 into 1998. Jack Heilbron, a broker-dealer and registered investment adviser, declared one cannot determine how much interest will be received from an interest-only strip until close to the time the last interest payment is received. Based upon his review of the interest payments Vista received, Heilbron declared it was not possible to determine whether Vista would lose money on SBA 533 until 1994.

Vista filed its complaint on November 17, 1995 against a number of broker-dealers and individual defendants. Against the broker-dealers, Vista alleged causes of action for intentional misrepresentation and fraudulent concealment; constructive fraud; breach of fiduciary duty; negligent misrepresentation; violation of California Corporations Code sections 25401,

25501, and 25504; professional negligence; breach of the implied covenant of good faith and fair dealing; money had and received; and ultra vires.

The court granted Robert Thomas's motion for summary judgment, finding the relevant statutes of limitations had run prior to the filing of the complaint. The court found there was no triable issue of fact that (1) Vista had discovered the investments were improper by September 6, 1990, and (2) Vista knew it had suffered pecuniary damage by October 18, 1991.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ We review de novo the trial court's decision to grant summary judgment. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].) In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. (*Ibid.*) That is, we strictly construe the moving party's evidence and liberally construe the opposing party's evidence. (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838 [89 Cal.Rptr.2d 540].) We do so by accepting as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148 [65 Cal.Rptr.2d 112].)

### II. *Statute of Limitations*

■ Civil actions can be commenced within the period prescribed by the statute of limitations "after the cause of action shall have accrued." (Code Civ. Proc. § 312; *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596 [83 Cal.Rptr. 418, 463 P.2d 770].) When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained. (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., supra,* 1 Cal.3d at p. 597.) "Mere threat of future harm, not yet realized, is not enough." (*Ibid.*) "Basic public policy is best served by recognizing that damage is necessary to mature such a cause of action." (*Ibid.*) Therefore, when the wrongful act does not result in immediate damage, "the cause of action does not accrue prior to the maturation of perceptible harm." (*Ibid.*; see also *Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924] ["It is clear that mere possibility,

or even probability, that an event causing damage will result from a wrongful act does not render the act actionable"].)

■ Damage is an element of many of the causes of action Vista pled: intentional misrepresentation and fraud (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601]); negligent misrepresentation (*id.* at p. 1239, fn. 4); breach of fiduciary duty (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 483 [80 Cal.Rptr.2d 329]); negligence (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., supra,* 1 Cal.3d at p. 597); and breach of the implied covenants of good faith and fair dealing (*Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 233 [68 Cal.Rptr.2d 31]). The resulting damage must be "actual monetary loss." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1240 [fraud].)

### III. *Triable Issue of Fact*

There is a triable issue of fact as to when Vista suffered monetary loss. Jack Heilbron, a registered investment adviser, declared "it is generally impossible to know the ultimate outcome of the SBA IO strip package investment until near the last interest payment received." Vista received interest payments into 1993 on SBA 366 and into 1998 on SBA 533. Based on his review of these interest payments, Heilbron declared Vista had not suffered any damage on the SBA 533 investment until 1994.

The court found Vista knew it had suffered pecuniary damage by October 18, 1991, when Rowlen wrote the letter stating there had been price collusion among the broker-dealers involved in SBA 533. In the letter Rowlen did not explain what he meant by price collusion. Rowlen later testified he meant his research showed SBA 533 had passed through a number of broker-dealers, each of which had charged a markup, resulting in an excessive markup. There is a triable issue of fact as to whether the markup was excessive because Putnam qualified his opinion by stating he did not know "the rationale for the price that was paid, so it is difficult for me to judge . . . ." Further, even if Vista believed it had been charged an excessive markup for SBA 533, Vista would not have suffered damage had it received interest payments sufficient to cover its initial payment and provide a reasonable return. In fact, Rowlen testified that in October 1991, he expected the interest payments to offset the price Vista paid for SBA 366 and SBA 533. Therefore there is a triable issue of fact as to whether Vista had suffered pecuniary damage by October 18, 1991.

Robert Thomas contends it "strains credulity" that the SBA strips had not dropped in value prior to 1994 because the other two SBA strips were sold

at a loss[1] and because the SBA strips were not guaranteed by the federal government. However, Robert Thomas has presented no evidence as to the value of the SBA strips at any point in time.

Robert Thomas also contends Vista suffered damage the instant it purchased the SBA strips because Vista could not legally own those securities under Government Code section 53601. Further, the gravamen of Vista's complaint is that the purchase of the SBA strips "changed the complexion of [Vista's] investment portfolio from being a conservatively managed portfolio of investments which met [Vista's] policy, to one filled with inappropriate investments that were traded on a speculative basis." Robert Thomas analogizes to *Twomey v. Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 727 [69 Cal.Rptr. 222] (*Twomey*), where the court stated "the gravamen of [the plaintiff's] complaint is that by virtue of the churning and the purchase of unsuitable stocks she was left with an improper portfolio . . . ." *Twomey* does not govern this case because the issue in *Twomey* was when the plaintiff discovered her damage; the court did not discuss when the damage occurred. Further, the *Twomey* action was for churning. In an action for churning, the essence of the action is to recover the fees associated with excess trading, whether or not the portfolio gained or lost income. (*Nesbit v. McNeil* (9th Cir. 1990) 896 F.2d 380, overruled on other grounds by *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson* (1991) 501 U.S. 350 [111 S.Ct. 2773, 115 L.Ed.2d 321].) In contrast, Vista's action is for fraud and breach of fiduciary duty; there is no claim of churning. In a fraud cause of action, damage is defined as "actual monetary loss." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1240.)

Robert Thomas also contends that because Vista had the right to rescind the contract as soon as it learned of the fraud, Vista should not be allowed to wait to sue until it incurred damage. Robert Thomas relies upon *Griffin v. Payne* (1933) 133 Cal.App. 363 [24 P.2d 370] (*Griffin*), where we held that a customer who was notified of a stock trade and did nothing could not later sue when he lost money on the stock. We reasoned that " 'where there remains with the principal, after his complete knowledge of the transaction, the power to rescind, and he fails to do so he is properly charged with the full acceptance of all the responsibilities of the contract, even to the exoneration of his agent, because with the ability to rescind, if he had rescinded, the transaction would be at an end and no one would be injured.' [Citation.]" (*Id.* at p. 373-374.) As the full quotation makes clear, *Griffin* relies upon a principal's ratification of an agent's action. *Griffin* does not govern this case,

---

[1]Robert Thomas relies upon Vista's attorney's statement that Vista lost money on the two SBA strips that were sold. However, Rowlen's October 4, 1990 letter states one of the SBA strips was sold at the price at which Vista purchased it.

where the broker "fail[s] to make a full disclosure of the facts surrounding the [security] transactions." (*Weiner v. Mullaney* (1943) 59 Cal.App.2d 620, 637 [140 P.2d 704] [distinguishing *Griffin* in a breach of fiduciary duty case].)

Vista has the right to elect its remedy: "When a party learns that he has been defrauded, he may, instead of rescinding, elect to stand on the contract and sue for damages, and in such case his continued performance of the agreement does not constitute a waiver of his action for damages." (*Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 750 [192 P.2d 935].) In this case, Vista elected to sue for fraud instead of rescission.

### IV. *The Four-year Statute of Limitations*

■ Vista contends the four-year statute of limitations applies to its causes of action for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing. The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786, fn. 2 [157 Cal.Rptr. 392, 598 P.2d 45].) The gravamen of Vista's complaint is that Robert Thomas's acts constituted actual or constructive fraud. The applicable statute of limitations for fraud is three years. (Code Civ. Proc. § 338, subd. (d).) Therefore, the court did not err in holding the statute of limitations is three years.

### DISPOSITION

The judgment is reversed. Respondent to bear costs on appeal.

Work, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied November 8, 2000, and respondent's petition for review by the Supreme Court was denied January 24, 2001.