Filed 6/18/14  Heritage Pacific Financial v. Furukawa CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

HERITAGE PACIFIC FINANCIAL, LLC,

    Plaintiff and Appellant,

v.

MICHELLE FURUKAWA,

    Defendant and Respondent.

E056578

(Super.Ct.No. RIC10011974)

O P I N I O N

APPEAL from the Superior Court of Riverside County.  Pamela Thatcher, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed with directions.

Law Offices of Mokri & Associates, Brad A. Mokri and Jennifer N. Harris for Plaintiff and Appellant.

Law Office of Ian D. Chowdhury and Ian D. Chowdhury for Defendant and Respondent.

1

# I.  INTRODUCTION

Defendant and respondent Michelle Furukawa purchased certain real property with two loans, each secured by a separate deed of trust on the property.  After Furukawa stopped repaying the loans, the property was sold at a trustee's sale pursuant to the senior trust deed.  Plaintiff and appellant Heritage Pacific Financial, LLC (Heritage) acquired the note secured by the junior deed of trust.  Heritage then sued Furukawa based on claims sounding in fraud and breach of contract.

Furukawa moved for summary judgment, which the trial court granted.  The court ruled that the breach of contract cause of action was barred by the antideficiency rule set forth in Code of Civil Procedure section 580d[1] and the remaining claims were barred by the three-year statute of limitations applicable to fraud claims under section 338, subdivision (d).

Heritage appealed.  We agree with Furukawa and the trial court that Heritage's tort claims are barred by the three-year statute of limitations.  As to Heritage's breach of contract claim, we conclude that Furukawa has failed to establish that there is no triable issue of fact as to the applicability of section 580d.  In particular, there is no evidence that a single entity held both the senior and junior notes when the senior deed of trust was foreclosed.  We also reject Furukawa's argument that the breach of contract claim is

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

barred by the four-year statute of limitations under section 337. We therefore reverse the judgment with directions, as set forth below.

## II. PROCEDURAL BACKGROUND

Heritage filed its complaint on June 17, 2010. It alleged four causes of action: fraud by misrepresentation, fraud by concealment, promissory fraud, and negligent misrepresentation. Heritage did not allege a cause of action for breach of contract.

On June 9, 2011, Heritage filed a first amended complaint (FAC), alleging six causes of action against Furukawa. In addition to fraud and negligent misrepresentation claims, the FAC includes causes of action against Furukawa for breach of contract, unjust enrichment, and civil conspiracy.

In the FAC, Heritage alleges the following essential facts: Furukawa applied for and obtained a $174,000 loan from American Home Mortgage (AHM); the loan is evidenced by a promissory note that was secured by a second mortgage on certain real property; Furukawa obtained the loan by misrepresenting, concealing, and suppressing certain material facts, including the fact that she "had no intention of repaying the loan"; AHM was unaware of the misrepresented, concealed, and suppressed facts and would not have made the loan to Furukawa if it had known the truth; Furukawa subsequently defaulted on her payment obligations under the note; Heritage is the assignee and current holder of the note; and Furukawa's intentional and negligent misrepresentations and her failure to repay the loan has unjustly enriched her and caused damages to Heritage.

3

Furukawa answered the FAC with a general denial and asserted various affirmative defenses, including section 580d and certain statutes of limitations. (§§ 337, 338.)

Furukawa moved for summary judgment and, in the alternative, summary adjudication of each cause of action asserted against her. The motion was based on the three-year statute of limitations for fraud actions (§ 338, subd. (d)), the four-year statute of limitations for breach of written contract claims (§ 337), and the antideficiency rule under section 580d. Following a hearing, the court granted the motion. The ruling was based on the three-year statute of limitations as to the tort claims and section 580d as to the contract claim.[2] After judgment was entered, Heritage appealed.

## III. UNDISPUTED FACTS

In August 2006, Furukawa obtained two loans from AHM. One loan was in the amount of $406,000, the other in the amount of $174,000. The funds from both loans were used to purchase certain real property in Corona, California. Each promissory note was secured by a separate deed of trust on the property. The deed of trust securing the larger note was senior to the deed of trust securing the smaller note.[3]

---

[2] The court did not address Furukawa's alternative argument that the breach of contract cause of action was barred by the four-year statute of limitations for actions founded on a written instrument under section 337.

[3] Our record includes a copy of the loan application, promissory note, and deed of trust evidencing the smaller loan; it does not include documents evidencing the larger loan.

4

Monthly payments were due under the smaller, junior note on the first of each month beginning October 1, 2006. According to the note, the failure to pay any monthly payment when due constituted a default. A late fee was due if and when an installment remained unpaid 15 days after it was due.

Furukawa made no payments on the senior or junior notes after December 6, 2006. When the junior note remained unpaid in January 2007, Furukawa was in default for nonpayment.

On June 27, 2007, the property was sold at a trustee's sale held pursuant to the power of sale under the senior deed of trust. The trustee's deed reflecting the sale indicated that the property was sold to the beneficiary of the senior deed of trust at that time, Countrywide Home Loans, Inc. (Countrywide).

Heritage purchased the junior note from First Lincoln Loan Services, LLC, a successor to AHM.[4] According to Heritage's custodian of records, Heritage is the owner of all rights associated with the junior note.

Heritage commenced this action on June 17, 2010. On March 16, 2011, it requested leave to file a FAC to include a claim for breach of contract and other causes of action. The request was granted and the FAC was filed on June 9, 2011.

---

[4] It is not clear when Heritage purchased the note. In its opposing separate statement, Heritage states that it acquired the junior note in "early 2009." The declaration it cites as evidence for this statement, however, does not indicate the date the note was acquired. Furukawa submitted Heritage's responses to interrogatories which identified a "Bill of Sale" as a document reflecting the assignment of the junior note to Heritage. The referenced Bill of Sale is dated January 8, 2010.

IV.  DISCUSSION

A.  *Standard of Review*

Summary judgment is properly granted when all of the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (§ 437c, subd. (c).)  A defendant is entitled to summary judgment if it establishes a complete defense to each of the plaintiff's causes of action or shows that one or more elements of each cause of action cannot be established.  (*Id.*, subd. (*o*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)  A moving defendant bears an initial burden of making a prima facie showing that there are no triable issues of material fact.  If the defendant meets this burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact.  (§ 437c, subd. (p)(2); *Aguilar, supra,* at pp. 850-851.)  From commencement to conclusion, however, the moving party defendant generally bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law.  (*Aguilar, supra,* at p. 850.)

On appeal from the grant of a motion for summary judgment, we independently determine whether there are any triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  We consider all of the evidence set forth in the moving and opposition papers, together with inferences reasonably deducible from the evidence, and we view the

evidence in the light most favorable to the party opposing the motion.  (*Aguilar, supra,* 25 Cal.4th at p. 843; *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1530.)

B.  *Statute of Limitations on Tort Claims*

Heritage alleges two counts of fraud based on intentional misrepresentations.[5] One is based on concealment of facts pertaining to the junior loan, including her "true intent in obtaining the loan"; the second is based on Furukawa's promise to repay the loan when she "had no intention of repaying the loan."  A third cause of action, for negligent misrepresentation, is based on the allegation that the misrepresentations upon which the fraud claims are based were made "without a reasonable ground to believe them to be true."  A cause of action for unjust enrichment is based upon the "wrongful and breaching conduct" of Furukawa and other defendants "in obtaining the loan proceeds under false pretenses."

The limitations period for an action for relief on the ground of fraud and negligent misrepresentation is three years.  (§ 338, subd. (d); *Broberg v. The Guardian Life Ins. Co.*

---

[5]  Although Heritage alleged that it is the assignee of the junior note, it has arguably failed to adequately allege an assignment of the right, if any, AHM and intervening assignees may have had to recover damages for the alleged fraud Furukawa committed against AHM.  (See *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 990-991; *Sunburst Bank v. Executive Life Ins. Co* (1994) 24 Cal.App.4th 1156, 1164.)  Although this argument was asserted as a ground for summary adjudication below, Furukawa does not reassert the argument on appeal.  Therefore, we do not consider it.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal may be deemed waived].)  If we assume that Heritage is the assignee of its predecessor's fraud claims, such claims are subject to any defenses Furukawa has against such predecessors.  (See Civ. Code, § 1459; *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310; *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 49.)

*of America* (2009) 171 Cal.App.4th 912, 920.)  The same three-year period applies to claims of unjust enrichment based on fraud.  (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1670; cf. *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 353 (*Dintino*) [applying § 338, subd. (d) to unjust enrichment claim based on mistake].)

"A plaintiff must bring a claim within the limitations period after accrual of the cause of action."  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806, citing § 312.)  Generally, a cause of action accrues "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.]  In other words, . . . when the cause of action is complete with all of its elements [citations] . . . ."  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.)  "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at p. 807.)

"'The necessary elements of fraud are:  (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' [Citations.]"  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.)  Negligent misrepresentation "does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)

8

The parties do not dispute that the elements of Heritage's tort claims other than damages occurred (if at all) more than three years before Heritage's complaint was filed in June 2010; that is, Furukawa's alleged misrepresentations, scienter, and intent to defraud, as well as the lender's reliance on Furukawa's misrepresentations, occurred when Furukawa applied for the loan and the lender funded the loan in August 2006. The disagreement lies in determining when these events resulted in damage to the note holder and when the note holder discovered, or had reason to discover, the alleged fraud.

Damage, for purposes of an action for fraud, occurs when the plaintiff suffers "actual monetary loss." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1240; accord, *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 887 (*Vista*).) Here, it is undisputed that the last payment on the junior note was made on December 6, 2006. When Furukawa did not make the payment that came due on January 1, 2007, that loan was, according to the terms of the note, in default. The failure to receive payment of money when due would seem to necessarily constitute an actual monetary loss. Heritage, however, contends that when, as here, the loan was secured by real property, the note holder has not suffered a monetary loss so long as it holds the underlying security interest; it is only when the junior deed of trust was extinguished by the trustee's sale on the senior note—an event that occurred within the limitations period—that the note holder is harmed.

Heritage offers no pertinent authority for its argument. It describes *Vista, supra,* 84 Cal.App.4th 882 as "instructive." In that case, the City of Vista purchased two

9

securities called "interest-only strips" in 1990. (*Id.* at p. 884.) These securities entitled the holder to a certain percentage of the interest from a pool of bonds. (*Ibid.*) Later that year, the city determined that the strips were not a proper investment for the city and sought to rescind the purchase. (*Id.* at p. 885.) In 1995, the city sued the securities dealers who sold it the strips for fraud and other tort claims. (*Id.* at pp. 885-886.) The trial court granted the defendant's motion for summary judgment on statute of limitations grounds because the city knew the investments were improper in 1990 and suffered pecuniary loss in 1991. (*Id.* at p. 886.) The Court of Appeal reversed.

In holding there was a triable issue of fact as to when the city suffered monetary loss, the *Vista* court pointed to evidence that the city had received interest payments on the investments into 1993 on one strip and into 1998 on the second. (*Vista, supra,* 84 Cal.App.4th at p. 887.) The court also relied on the declaration of an investment advisor who opined that "'it is generally impossible to know the ultimate outcome of the . . . strip package investment until near the last interest payment received.'" (*Ibid.*) The advisor concluded that the city "had not suffered any damage" on one of the strips "until 1994." (*Ibid.*)

*Vista* is inapposite. It does not appear from the decision that the city failed to receive any payment it was due under the strips or that any counterparty was ever in default. At most, the defendant asserted that the strips had dropped in value, but offered no evidence as to value. (*Vista, supra,* 84 Cal.App.4th at pp. 887-888.) Moreover, because the case did not involve an obligation secured by a deed of trust or other security

10

instrument, the court had no occasion to address the point Heritage asserts here—that it suffered no damage until the foreclosure of the senior deed of trust caused the loss of the security for the junior note. In short, *Vista* simply holds that, based on the evidence before the court in that case, summary judgment was improper because there were triable factual issues as to when the city suffered a monetary loss. It provides no support for Heritage's claim.

Heritage also cites to *Pedro v. Soares* (1937) 18 Cal.App.2d 600 for the proposition that the statute of limitations for fraud does not commence until the foreclosure of mortgaged property. In that case, Pedro had a claim against Soares for unpaid rent. Soares and a third party, Goncalves, subsequently entered into a chattel mortgage to secure a debt owed by Soares to Goncalves. Goncalves foreclosed the mortgage and sold the collateral to another party, thereby precluding Pedro from access to that property to satisfy his claim for rent. Soares was adjudged a bankrupt and his debts, including Pedro's claim for rent, were discharged. Pedro sued Goncalves to recover the money Goncalves received from the chattel mortgage foreclosure sale claiming that the mortgage was a fraud perpetrated to prevent Pedro from recovering from Soares. The trial court agreed with Pedro and held that the money Goncalves received upon the sale of the mortgaged property was held in trust for the benefit of Pedro. The Court of Appeal affirmed. As to Goncalves's argument regarding the statute of limitations, the court held that Pedro was not actually damaged by the fraudulent mortgage until the foreclosure sale took place. (*Id.* at p. 609.)

11

*Pedro* is easily distinguished. Prior to the foreclosure sale in that case, Soares was in default in his rent to Pedro. The relationship between Pedro and Soares was thus analogous to the debtor-creditor relationship between the note holder and Furukawa in this case; any claim by Pedro against Soares undoubtedly ripened upon Soares's default. However, the relevant claim in *Pedro* was not Pedro's claim for unpaid rent against Soares (which had been discharged in bankruptcy), but rather Pedro's fraudulent transfer claim against Goncalves. Goncalves, unlike Soares, had had no dealings whatsoever with Pedro and owed Pedro nothing until, at the earliest, the foreclosure sale. It is only then that Goncalves arguably deprived Pedro of any money or property, and only then that Pedro could have suffered an actual monetary loss as a result of Goncalves's wrongful conduct. Furukawa, by contrast, indisputably owed money to the holder of her note in January 2007 and did not pay. *Pedro* provides no guidance whatsoever on this situation and does nothing to alter our conclusion that the holder of Furukawa's note suffered an actual monetary loss at that time.

We now turn to the application of the discovery rule. Under the discovery rule, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him [citation], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' [citation]. He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. [Citation.] He has reason to

12

suspect when he has "'"""notice or information of circumstances to put a reasonable person *on inquiry*"'"" [citation]; he need not know the 'specific "facts" necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does [citation.]" (*Norgart v. Upjohn Co., supra,* 21 Cal.4th at pp. 397-398, fns. omitted.)  For purposes of the discovery rule, Heritage, to the extent it has the right to assert the original lender's fraud claim, is deemed to have the knowledge of its predecessors.  (*Dintino, supra,* 167 Cal.App.4th at p. 353.)

In *Dintino*, the defendant borrower had made all monthly installments on his note between seven and 18 days after the due dates.  (*Dintino, supra,* 167 Cal.App.4th at p. 339.)  The borrower, Dintino, did not pay the installment due on September 1, 2000, and made no further payments.  (*Ibid*.)  The lender filed its lawsuit against Dintino on September 5, 2003—three years and four days after the payment default.  (*Id.* at p. 340.)  Dintino asserted the three-year statute of limitations under section 338, subdivision (d).  On appeal, the Court of Appeal rejected Dintino's argument because the bank "did not discover, and should not have reasonably discovered, its . . . cause of action until, at the earliest, September 15, 2000 when Dintino's September installment became subject to a late charge."  (*Id.* at p. 351.)  The court explained that "[t]here was nothing unusual in the fact that Dintino did not pay his September 2000 installment on or before September 1,

13

its technical 'due date.' On the contrary, the first unusual occurrence that would give [the bank] information that there may be a problem with Dintino's payment of the Note was September 15, 2000, when he did not pay the September installment before a late charge was imposed. Accordingly, there was no occurrence before September 15, 2000, that would lead [the bank] to suspect Dintino would not continue to pay all installments on the Note and, thus, that [the bank] may have [a] . . . cause of action based on mistake. On September 15, 2000, at the earliest, [the bank] therefore was charged with information that would cause it to suspect it had such a cause of action and require it to investigate the matter . . . . Accordingly, based on our application of the discovery rule to the undisputed facts in this case, we conclude, as a matter of law, that [the bank's] . . . cause of action based on mistake did not begin to accrue until September 15, 2000, at the earliest." (*Id.* at p. 354.)

*Dintino*'s analysis is applicable here. Applying the discovery rule to the undisputed facts in this case, the note holder "was charged with information that would cause it to suspect it had . . . a cause of action and require it to investigate the matter" by the date a late charge was imposed on Furukawa's account. (*Dintino, supra,* 167 Cal.App.4th at p. 354.) That date was no later than January 17, 2007. Even if that date is merely the *earliest* the cause of action would have accrued, not the *latest*, the note holder certainly had the requisite notice or information when a notice of trustee's sale was prepared on June 6, 2007—a date more than three years before the original complaint was filed.

14

Heritage asserts that an account statement showing the loan in default in January 2007 and indicating the next payment's due date in February 2007 indicates that Furukawa "fell behind in her payments, but was still attempting to get back on track." Heritage also points to a March 2007 letter to Furukawa from a loan servicing business suggesting some alternatives to remedy the default. Heritage argues that this letter shows that the lender was attempting to "resolve the account." Such evidence and the inferences Heritage draws from them do not create a disputed material fact as to when the default occurred and whether the lender had reason to discover the tort claims it now asserts.

Finally, Heritage points to Furukawa's deposition testimony, which suggests that the last payment on the note may have occurred in October or November 2006, rather than December 2006 as asserted in support of the motion for summary judgment. Although this would make the default even earlier (and the statute of limitations defense correspondingly stronger), Heritage contends the discrepancy raises a triable issue of material fact as to Furukawa's credibility. The argument is without merit. Regardless of whether Furukawa recalled the correct month in which the last payment was made, there is no dispute that it occurred well outside the three-year limitations period.

Based on the foregoing, we conclude that there is no triable issue of material fact as to Furukawa's defense of the statute of limitations as to Heritage's fraud and negligent misrepresentation claims. Because Heritage's unjust enrichment and civil conspiracy claims are based upon the same allegations, they too are time-barred for the same

reasons. (See *Dintino, supra,* 167 Cal.App.4th at pp. 353-354; *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574 [there is no civil action for conspiracy to commit a tort unless the wrongful act itself is committed].)

C. *Application of Section 580d*

Section 580d provides that "no deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property . . . executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." The statute "precludes a judgment for any loan balance left unpaid after the lender's nonjudicial foreclosure under a power of sale in a deed of trust . . . on real property." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 237.)

In *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43, our state Supreme Court held that section 580d did not extend to a junior lienor whose security interest in property had been extinguished by a trustee's sale under a senior lien. (*Id.* at p. 43.) The court explained that neither the text of section 580d nor the policy reasons underpinning the statute support its application to sold-out junior lienors. (*Id.* at pp. 43-44.)

In *Simon v. Superior Court* (1992) 4 Cal.App.4th 63, the Court of Appeal distinguished *Roseleaf.* In *Simon*, a bank loaned money to the Simons in the form of two separate promissory notes, each secured by a separate deed of trust. When the Simons defaulted, the bank nonjudicially foreclosed on the senior deed of trust and then sued the Simons for the amount due under the junior note. (*Simon, supra,* at p. 66.) The bank

16

contended that it was a sold-out junior and could, under *Roseleaf*, sue to recover the amount owed under the junior note. (*Simon, supra,* at p. 72.) The court disagreed, and held that "where a creditor makes two successive loans secured by separate deeds of trust on the same real property and forecloses under its senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, section 580d . . . bars recovery of any 'deficiency' balance due on the obligation the junior deed of trust secured." (*Id.* at p. 66, fn. omitted.) The court explained: "We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d. The elevation of the form of such a contrived procedure over its easily perceived substance would deal a mortal blow to the antideficiency legislation of this state. Assuming, arguendo, legitimate reasons do exist to divide a loan to a debtor into multiple notes thus secured, section 580d must nonetheless be viewed as controlling where, as here, the senior and junior lenders and lienors are identical and those liens are placed on the same real property. Otherwise, creditors would be free to structure their loans to a single debtor, and the security therefor, so as to obtain on default the secured property on a trustee's sale under a senior deed of trust; thereby eliminate the debtor's right of redemption thereto; and thereafter effect an excessive recovery by obtaining a deficiency judgment against that debtor on an obligation secured by a junior lien the creditor chose to eliminate." (*Id.* at pp. 77-78.)

In the present case, Furukawa relied on *Simon* to support her motion, arguing that "loans issued simultaneously as a first and second mortgage by the same lender are treated exactly the same under [section] 580d, as if they had been structured as a single loan." The trial court also relied on *Simon* in granting the motion.

After the court ruled on the motion for summary judgment, appellate courts published two cases, which are the focus of the arguments on appeal. The first is *Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199 (*Mitchell*), which Furukawa relies on for support. The second is *Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531 (*Cadlerock*), which Heritage relies upon.

In *Mitchell*, a mortgage lender, GreenPoint Mortgage Funding, Inc. (GreenPoint), loaned Mitchell $315,000 in the form of two notes, each secured by a separate deed of trust. (*Mitchell, supra,* 204 Cal.App.4th at p. 1203.) Mitchell defaulted on both notes. GreenPoint foreclosed on the senior deed of trust, thereby eliminating the security for the junior note. GreenPoint subsequently assigned the junior note and deed of trust to the plaintiff bank, which then sued Mitchell for the balance due on the note. The Court of Appeal held that the bank's action was barred by section 580d. (*Id.* at p. 1208.) "*Simon*," the court explained, "is dispositive of the present case. . . . As in *Simon*, the first and second deeds of trust were held by a single lender, GreenPoint. GreenPoint, as beneficiary under the first deed of trust, chose to exercise its power of sale by holding a nonjudicial foreclosure sale. GreenPoint thus was not a 'sold-out junior' lienor and would not have been permitted to obtain a deficiency judgment against Mitchell under

18

the rule articulated in *Simon*.  The result is no different because GreenPoint, *after the trustee sale*, assigned the second deed of trust to the Bank." (*Id.* at p. 1207.)

Two months after *Mitchell* was decided, Division Three of this court decided *Cadlerock*.  In *Cadlerock*, Lobel borrowed money from a lender, Sea-Breeze Financial Services, Inc. (Sea-Breeze).  (*Cadlerock, supra,* 206 Cal.App.4th at p. 1537.)  Like the loans in *Simon* and *Mitchell*, the loan consisted of two promissory notes secured by separate deeds of trust on the same property.  Shortly after the loan was made, Sea-Breeze assigned the junior loan to another entity, which subsequently assigned it to LaSalle Bank, N.A.  (*Cadlerock, supra,* at p. 1538.)  Lobel defaulted on both notes.  Sea-Breeze assigned the senior note and deed of trust to Central Mortgage Company, which conducted a nonjudicial foreclosure sale, thereby extinguishing the junior deed of trust.  (*Ibid.*)  LaSalle Bank, N.A. thereafter assigned the junior note to plaintiff Cadlerock.  Cadlerock sued Lobel for breach of contract and other claims.  The trial court granted Lobel's motion for summary judgment based on section 580d, and the Court of Appeal reversed.  (*Id.* at p. 1538.)

The Court of Appeal held: "[W]hen two separate loans are secured (via separate deeds of trust) by the same real property, section 580d does not prevent a junior creditor from obtaining a money judgment for the full amount due on the underlying junior debt obligation when the senior lienholder conducts a nonjudicial foreclosure that extinguishes the junior lienholder's security interest." (*Cadlerock, supra,* 206 Cal.App.4th at p. 1536.)  The court discussed *Simon* and *Mitchell*, but distinguished them, explaining that in the

19

case before it, "the junior lienor and senior lienor were different entities at the time of the senior trustee's sale. There is no suggestion in the record that the loan originator (Sea-Breeze) and any of the various assignees of the senior and junior loans were affiliated in any way or conspired in any way to evade the antideficiency laws. Sea-Breeze provided both loans to Lobel at the same time, but soon thereafter assigned the junior loan (and accompanying deed of trust) to a third party and ultimately assigned the senior loan to yet another entity. The factual circumstances do not suggest two loans were created (when one would have sufficed) as an artifice to evade section 580d." (*Cadlerock, supra,* at pp. 1546-1547.)

In both *Mitchell* and *Cadlerock*, a lender originated a loan consisting of two promissory notes secured by separate deeds of trust against the same property; the borrower defaulted and the holder of the senior note foreclosed the senior lien by nonjudicial foreclosure sale, thereby eliminating the junior lien. The feature that distinguishes *Mitchell* and *Cadlerock* is the timing of the assignment of the junior note vis-à-vis the foreclosure sale of the senior deed of trust. In *Mitchell*, the junior and senior notes (and their correlated liens) were held by the same entity *at the time of the foreclosure*; significantly, the junior note was assigned *after the senior foreclosure*. The holder of the junior note was barred by section 580d from an action to recover under the note. In *Cadlerock*, by contrast, the originating lender assigned the senior and junior notes to different entities *before the foreclosure sale* under the senior lien. Under those circumstances, section 580d did not preclude the junior from recovering on the note.

20

Here, as in *Mitchell* and *Cadlerock*, a lender (AHM) loaned money to the defendant-borrower (Furukawa) in the form of two notes, each secured by separate deeds of trust on the same property. As in those cases, the defendant defaulted and the holder of the senior deed of trust nonjudicially foreclosed, eliminating the junior lien. In determining whether *Mitchell* or *Cadlerock* applies here, the issue is thus narrowed to whether the same entity held the senior and junior notes and deeds of trust at the time of the foreclosure of the senior lien. The answer to this question cannot be determined based upon the papers submitted in connection with the motion for summary judgment.

Significantly, Furukawa did not set forth in her separate statement of undisputed facts the identity of the holders of the senior and junior notes at the time the senior lien was foreclosed. The only fact asserted regarding the foreclosure sale is: "On June 27, 2007, the Property was non-judicially foreclosed upon, pursuant to the power of sale in the [senior deed of trust], i.e., pursuant to the first mortgage." The evidence cited for that fact is Furukawa's declaration, which identifies the trustee's deed that resulted from the trustee's sale. The referenced trustee's deed indicates that Countrywide was both the foreclosing beneficiary under the deed of trust and the purchaser of the property at the foreclosure sale. Neither the proffered fact nor the evidence supporting it indicates that the owner of the senior note (apparently, Countrywide) also held the junior deed of trust at the time of the foreclosure. Indeed, there is no evidence suggesting that Countrywide ever held an interest in the junior note or deed of trust.

21

In her brief on appeal, Furukawa asserts that AHM foreclosed on the senior deed of trust. This fact is neither in Furukawa's separate statement nor is it supported by the evidence cited in the brief. Such evidence includes the original deeds of trust, which indicate only that AHM was the original lender and deed of trust beneficiary. Furukawa also points to the notice of trustee's sale and a substitution of trustee. These documents provide no indication as to who owned the junior note at the time of the senior foreclosure sale.

Because Furukawa has failed to establish that there is no triable issue of fact as to whether the same entity held both the senior and junior notes and deeds of trust at the time of the foreclosure sale, she is not entitled to summary adjudication based on the application of section 580d.

D. *Statute of Limitations on Breach of Contract Claim*

The limitations period for a cause of action for breach of a written contract is four years. (§ 337, cl. (1).) The "cause of action . . . ordinarily accrues at the time of breach, and the statute [of limitations] begins to run at that time regardless whether any damage is apparent or whether the injured party is aware of his or her right to sue." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, p. 664; see *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120.)

Heritage's claim for breach of contract was not asserted until the FAC was filed in June 2011, more than four years after the alleged breach and outside the limitations period. However, "an amended complaint relates back to the filing of the original

22

complaint and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts." (*Idding v. North Bay Construction Co.* (1995) 39 Cal.App.4th 1111, 1113, citing *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596.) The relation-back doctrine is focused "on factual similarity rather than rights or obligations arising from the facts . . . ." (*Goldman v. Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085, 1094.) The fact that the amended complaint rests upon a different legal theory or states a different cause of action is irrelevant; the test is whether the two complaints relate to the same general set of facts. (*Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 940.) If this "relation-back" rule applies, Heritage's amended pleading will be deemed filed when the original complaint was filed in June 2010—three and one-half years after the January 2007 payment default—and, therefore, within the four-year limitations period.

"The relation-back doctrine . . . requires courts to compare the factual allegations in the original and amended complaints." (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 416.) Here, the pertinent facts asserted in the original complaint are: Furukawa applied for and obtained a loan from AHM based upon material misrepresentations; Furukawa knew the information in her loan application was materially false and made the misrepresentations with the intent to defraud AHM and induce AHM to make the loan; AHM relied upon the misrepresentations in making the loan; the loan was evidenced by a promissory note in which Furukawa promised to repay the loan; Furukawa made this promise without any intention of repaying the loan; shortly

23

after the loan transaction closed, Furukawa defaulted on the payment obligations; Heritage is the successor to AHM and owner of the Furukawa note; and Heritage has been damaged as a result of Furukawa's actions.

In its cause of action for breach of contract in the FAC, Heritage alleges, in essence, Furukawa's making of the same promissory note alleged in the original complaint, Heritage's ownership of the note, Furukawa's breach of the terms and conditions of the note by failing to repay the loan, and damages caused by the breach.

A comparison of the original complaint and the breach of contract allegations in the FAC reveal that the allegations of Furukawa's promise (i.e., to repay the loan), the breach of that promise (nonpayment), and damages caused by that breach were alleged in support of the original fraud claims as well as the subsequent breach of contract claim. Moreover, the injury caused by the fraud and the breach of contract was the same—the loss of the money AHM loaned to Furukawa that was not repaid. We therefore conclude that the breach of contract claim in the FAC is based on the same general set of facts upon which Heritage sought relief in the original complaint.

In arguing that the breach of contract claim does not relate back, Furukawa points to the following allegation in the original complaint that was omitted in the FAC: "[Heritage] does not seek a deficiency judgment for the balance of a promissory note following foreclosure, but rather seeks a judgment for [Furukawa's] fraud in connection with [her] loan application . . . ." Furukawa argues that the FAC "add[ed] exactly such a claim for a deficiency judgment." As Heritage points out, the omitted language did not

24

alter the general set of facts upon which the original claims and the breach of contract claim are based.

Furukawa further argues that the relation-back rule does not apply when, as here, the claims in the original complaint are time-barred; in this situation, Furukawa contends, there is nothing "for the breach of contract claim to relate back *to*." We reject this argument. For purposes of the relation-back doctrine, a new pleading has nothing to relate back to when the prior pleading has been dismissed or adjudicated to the point of a final appealable judgment. (See *Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 296-297.) If, for example, a demurrer to Heritage's original complaint was sustained without leave to amend and a judgment of dismissal was entered, a subsequent complaint in which Heritage alleged a breach of contract would not relate back to the filing of the original complaint. (See *ibid.*) Here, however, the original complaint was still pending when the amended complaint was filed. In this situation, the legal viability of the original claim is irrelevant; the inquiry is whether the new claim is based on the same general set of facts as the original. As discussed above, the breach of contract claim is based on the same general set of facts set forth in the original complaint.

## V.  DISPOSITION

The judgment is reversed. The court shall vacate its order granting summary judgment and enter a new order (1) denying Furukawa's motion for summary judgment, (2) granting Furukawa's motion for summary adjudication as to the first, second, third,

25

fifth, and sixth causes of action, and (3) denying Furukawa's motion for summary adjudication of the fourth cause of action.

Heritage shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>KING</u>
J.

We concur:

<u>RICHLI</u>
Acting P. J.

<u>MILLER</u>
J.